NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHELITA BOURGEOIS,

        *Plaintiff*,

v.

NORDSTROM, INC.,

        *Defendant*.

Civ. Action No. 11-2442 (KSH)

OPINION

**Katharine S. Hayden, U.S.D.J.**

Plaintiff Shelita Bourgeois filed this employment discrimination action against her former employer, defendant Nordstrom. This matter comes before the Court now on Nordstrom's motion to stay the judicial proceedings pending arbitration pursuant to the Nordstrom Dispute Resolution Program it claims Bourgeois assented to. For the following reasons, the Court will grant Nordstrom's motion to stay pending arbitration.

**I. Background**

    *A. Factual Background*

Bourgeois was hired by Nordstrom in 1991 as a salesperson at its Menlo Park store in Edison, New Jersey. (Cert. of Shelita Bourgeois, ¶ 2.) She transferred to the Paramus store in 1997 and became a Department Manager of the Men's Clothing Department. (*Id.* at ¶ 6, Ex. B.) In the summer of 2004, while at a manager's meeting, Bourgeois was informed about

Nordstrom's new dispute resolution program. (*Id.* at ¶ 7–9.)  Following the meeting, in September of 2004, Bourgeois received the "Nordstrom Dispute Resolution Program Booklet" ("Program Booklet") and the "Nordstrom Dispute Resolution Program Employee Acknowledgement Form" ("Acknowledgement Form"), which stated:

> I acknowledge that I have received a copy of the Nordstrom Dispute Resolution Program ("Program Booklet"), which explains how employment disputes between Nordstrom and myself must be resolved, including the fact that any covered claim not resolved through the Program's Steps 1 and 2 must be resolved through arbitration.  In understand that Nordstrom has asked me to carefully read the Program Booklet.
> I understand that the Program becomes effective on December 1, 2004, for employees who are employed with Nordstrom on or after December 1, 2004. I further acknowledge that I have received at least 60 days advance notice of the Program's terms and effective date.
> I understand nothing in this Acknowledgement form or in the Program alters my at-will employment relationship with Nordstrom.

(Cert. of Leslie Orr-Wilkerson, Ex. A.)  Bourgeois claims she was forced to sign the form because it was stated in "clear and unambiguous terms" that she would be terminated if the form was not signed and returned immediately. (Cert. of Shelita Bourgeois, ¶ 10.)  Bourgeois signed the form on September 27, 2004.  (Cert. of Leslie Orr-Wilkerson, Ex. A.)

Bourgeois's employment with Nordstrom was terminated on April 25, 2007. (Def's Br. 3.)  She had filed a charge with the Equal Employment Opportunity Commission (EEOC) in December of 2006, alleging discrimination.  (Cert. of Stephen Klausner, ¶ 4.) Upon being terminated in April of 2007, she filed an additional charge with the EEOC alleging retaliation. (*Id.* at ¶ 5.)  After a lengthy investigation, the EEOC issued a determination finding reasonable cause sustaining both charges on June 17, 2010. (Pl's Opp. Br. 3.) The parties then engaged in conciliation as mandated by the EEOC. (*Id.*)  The conciliation failed, and the EEOC subsequently provided Bourgeois with two right to sue letters on February 24, 2011.  (*Id.*)

2

As a result, Bourgeois timely filed this action on April 28, 2011. On September 23, 2011, in lieu of responding to the complaint in substance, Nordstrom filed this motion to stay judicial proceedings pending arbitration of Bourgeois's claims pursuant to the Nordstrom Dispute Resolution Program.

### B. The Dispute Resolution Program

The Program Booklet in pertinent part states:

> Nordstrom is engaged in interstate commerce . . . , which includes your employment. The Federal Arbitration Act compels the arbitration of all covered claims and governs the interpretation and enforcement of the employee acknowledgement and agreement forms, the Dispute Resolution Program booklet and the arbitration proceedings.

(Cert. of Leslie Orr-Wilkerson, Ex. C.)

The Program Booklet was accompanied by a document entitled "Nordstrom Dispute Resolution Program Important Information for New Jersey Employees." It explains:

> You must use the Nordstrom Dispute Resolution Program instead of a court proceeding, including a jury trial, to resolve covered claims against Nordstrom, its officers, directors, shareholders, employees or others in their personal or official capacity that arise from or are in any way connected with your current or future employment.  Likewise, Nordstrom must also use the Dispute Resolution Program instead of a court proceeding to resolve covered claims against you that arise from or are in any way connected with your current or future employment.

(Cert. of Leslie Orr-Wilkerson, Ex. B.)  It further explains that the Program covers:

> Claims of harassment (including, but not limited to, sexual harassment); discrimination (including, but not limited to, claims based on race, sex, . . . age, . . . .); or retaliation, whether such claims arise under Title VII of the Civil Rights Act of 1964, The Americans with Disabilities Act, the Age Discrimination in Employment Act, . . . or other applicable laws.

(*Id.*)

### II. Standard of Review

There is a strong federal policy in favor of arbitration which "requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625–26 (1985). In evaluating a motion to stay pending arbitration, the Court must evaluate (1) "whether a valid agreement to arbitrate exists," and (2) "whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

In this case, the parties do not dispute that Bourgeois's claims of discrimination and retaliation fall plainly within the scope of the Nordstrom Dispute Resolution Program. The parties also agree that the Federal Arbitration Act (FAA) applies to determine the validity and enforceability of the arbitration agreement. 9 U.S.C. § 9. The dispute here centers on whether Bourgeois and Nordstrom actually entered into a valid agreement to arbitrate.

Section 2 of the FAA states that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). The law of the state in which the contract was formed applies to the inquiry. *See id.* "Although it is firmly established that the FAA preempts state laws that invalidate arbitration agreements, the FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles." *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 85 (2002) (citing 9 U.S.C. § 2). Here, the parties do not dispute that the arbitration agreement was entered into in New Jersey and New Jersey law should be applied to determine whether it is

enforceable. The Court agrees and will evaluate the validity of the purported arbitration agreement using the principals of New Jersey contract law.

### III.   Analysis

#### A.   *The Parties Entered into a Valid Agreement to Arbitrate*

Under New Jersey law, "arbitration agreements may not be subjected to more burdensome contract formation requirements than that required for any other contractual topic." *Martindale*, 173 N.J. at 83. For an arbitration agreement to be enforceable in the employment context it "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim. Generally, [the court] determine[s] a written agreement's validity by considering the intentions of the parties as reflected in the four corners of the written instrument." *Leodori v. CIGNA Corp.*, 175 N.J. 293, 302 (2003), *cert. denied*, 540 U.S. 938 (2003). Moreover, a valid agreement to arbitrate in New Jersey requires consideration. *Martindale*, 173 N.J. at 87–88.

It is undisputed here that Bourgeois signed the Acknowledgement Form. The Court is also satisfied that the Acknowledgment Form, Program Booklet and accompanying document of Important Information for New Jersey Employees clearly and unambiguously set forth the intent to arbitrate. The New Jersey information sheet, as quoted above, expressly states that employees "must use the Nordstrom Dispute Resolution Program instead of a court proceeding, including a jury trial, to resolve covered claims against Nordstrom" and proceeds to list claims of discrimination and retaliation as covered claims and includes the relevant state and federal statutes through which such claims are made. This "language easily satisfies the requirement that such clauses provide an unmistakable expression of an employee's willingness to waive his or her statutory remedies." *Leodori*, 175 N.J. at 303 (concluding that language in an employee

handbook which listed the various federal and state statutory claims its arbitration program encompassed was an unambiguous expression of intent to arbitrate those claims).

Bourgeois, however, argues that there was no consideration, and thus, the Acknowledgement Form did not create a valid binding contract. "Basic contract principles render a promise enforceable against the promisor if the promisee gave some consideration for the promise." *Martindale*, 173 N.J. at 87. "The essential requirement of consideration is a bargained-for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Shebar v. Sanyo Bus. Sys. Corp.,* 111 N.J. 276, 289 (1988). "Put another way, '[a] very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration to support a contract when made by a person of good capacity, who is not at the time under the influence of any fraud, imposition or mistake.'" *Martindale*, 173 N.J. at 87 (quoting *Traphagen's Ex'r v. Voorhees*, 44 N.J. Eq. 21, 31, (Ch. 1888)). "In New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment-related agreements." *Id.* at 88–9. (citing *Quigley v. KPMG Peat Marwick, LLP*, 330 N.J. Super. 252, 265, (App. Div. 2000), *cert. denied*, 165 N.J. 527 (2000) (stating that employment can be deemed consideration for employee's submission to employer's demands, including arbitration); *Hogan v. Bergen Brunswig Corp.,* 153 N.J. Super. 37, 43 (App. Div. 1977) (holding that continuation of plaintiff's employment for approximately three years after plaintiff signed letter acknowledging restrictive covenant against post-employment competition constituted sufficient consideration to enforce agreement)).

Nordstrom therefore argues, "[t]here was consideration for an agreement to arbitrate between Bourgeois and Nordstrom because Bourgeois agreed to forgo her right to a jury trial and continued to work for Nordstrom for two and a half years after signing the Employee

Acknowledgement Form; in return, Nordstrom agreed to arbitrate any employment-related claims it may have against Bourgeois and to continue to employ her." (Def's Br. 11.) Bourgeois disputes that her continued employment is consideration because she claims her status as an "at will" employee makes any promise of continued employment on the part of Nordstrom illusory and not a proper basis for consideration. (Pl's Opp. Br. 7.)

In making her argument, Bourgeois seeks to have this Court apply the law of Texas or Maine, and ignores the simple fact that in New Jersey continued employment is sufficient to fulfill the consideration requirement, even for "at-will" employees. (*See id.* at 7–8 (citing *Tenet Healthcase, LTD v. Cooper*, 960 S.W. 2d 386, 388 (Tex. App. Div. 1998); *Snow v. BE&K Constr. Co.,* 126 F. Supp. 2d 5 (D. Me. 2001).) Unlike the reasoning used in Texas and Maine, at-will employment status does not appear to be relevant to the consideration inquiry in New Jersey because it is not discussed in any of the relevant cases. Moreover, in *Martindale,* the New Jersey Supreme Court supported its conclusion that continued employment is sufficient consideration for an arbitration agreement by citing to *Hogan*, a case which evaluated the validity of a restrictive covenant agreement as applied to an at-will employee. 173 N.J. at 88–89. The district court has also interpreted *Hogan* to stand for the principle that "the continued employment of an *at-will* employee upon his execution of an agreement not to compete may constitute sufficient consideration to support the validity and enforceability of the restrictive covenant under New Jersey law." *Campbell Soup Co. v. Desatnick,* 58 F. Supp. 2d 477, 492 (D.N.J. 1999) (Simandle, J.) (citing *Hogan,* 153 N.J. Super. at 43) (emphasis added). Therefore, although New Jersey case law does not contemplate at-will employment status in evaluating consideration, Bourgeois has not presented the Court with any binding law that would

7

suggest it is relevant. This Court agrees with the sound reasoning of *Campbell*—continued employment of an at-will employee may constitute valid consideration under New Jersey law.

The Court finds that Bourgeois's continued employment for two and a half years after signing the Acknowledgement Form is sufficient consideration for the arbitration agreement. Therefore, the parties entered a valid agreement to arbitrate.

> *A. Nordstrom's Reservation of the Right to Change Terms Does Not Make the Agreement to Arbitrate an Illusory Promise*

Bourgeois also argues that the arbitration agreement is an illusory promise because Nordstrom reserves the right to make changes to the agreement. In pertinent part, the Program Booklet says:

> From time to time, it may be necessary to make changes to this booklet to comply with changes in the law. Nordstrom will provide 30 days written notice of substantive changes. This notice allows employees time to consider the changes and decide whether or not to continue employment subject to the changes. Nordstrom also reserves the right to make non-substantive changes to this program at any time. Changes to or termination of this program will not affect existing claims. . . .

(Cert. of Leslie Orr-Wilkerson, Ex. C.) Bourgeois cites to decisions of the district courts of Maine and Kansas and to the Fifth Circuit to argue that by retaining the unilateral power to change or terminate the arbitration agreement, Nordstrom has made an unenforceable illusory promise. (Pl's Opp. Br. 7–12 (citing *Snow v. BE&K Construction Co.,* 126 F. Supp. 2d 5 (D. Me. 2001); *Phox v. Atriums Mgmt. Co., Inc.*, 230 F. Supp. 2d 1279 (D. Kan. 2002); *Morrison v. Amway Corp.,* 517 F. 3d 248 (5th Cir. 2008).)

Bourgeois's argument again ignores the fact that these cases are not binding precedent on this Court and, more fundamentally, misconstrues the reasoning of the cited decisions which addressed situations in which employers retained complete, unfettered discretion to change or terminate agreements, which is distinguishable from what Nordstrom has done here. In *Snow*,

the court concluded that an employee handbook that included the disclaimer "The Company reserves the right to modify or discontinue this program at any time," rendered the arbitration agreement illusory because "nothing would have prevented the company from choosing to avoid arbitration." 126 F. Supp. 2d at 13–14.  Similarly in *Phox*, the court concluded that the employee handbook did not amount to an enforceable contract because "in numerous provisions including the arbitration clause itself, defendant reserves the right to modify or cancel the provisions of the Employee Handbook at its sole discretion." 230 F. Supp. 2d at 1282.  Finally, in *Morrison*, the Fifth Circuit concluded that an agreement was illusory where, "[t]here [was] no express exemption of the arbitration provisions from [the employer's] ability to unilaterally modify all rules, and the only express limitation on that unilateral right [was] published notice."  517 F. 3d at 254. Moreover, the agreement included "nothing to suggest that once published the amendment would be inapplicable to disputes arising, or arising out of events occurring, *before* such publication." *Id.*

Nordstrom's reservation of the right to amend the terms of its arbitration agreement is distinguishable because the agreement requires publication and 30 days notice for all "substantive changes" to the program, and expressly states that changes to or termination of the program will not affect existing claims. The Third Circuit has concluded that a similar clause in an arbitration agreement did not render it illusory. In *Blair v. Scott Specialty Gases*, an employee claimed that his employer's arbitration agreement was illusory because it included a clause which stated:

> I understand that nothing in this Handbook can be modified or deleted, nor can anything be added in any way by oral statements or practice. Only the Executive Committee of Scott Specialty Gases can change this Handbook, and the change must be in writing. If Scott Specialty Gases makes any material changes, it will give me a copy of them, and by remaining employed by Scott Specialty Gases thereafter I will be deemed to have accepted these changes.

9

283 F. 3d 595, 604 (3d Cir. 2001). The court concluded that because the company reserved only the limited right to make non-material changes unilaterally, the promise of arbitration was not illusory. *Id.*

Here, Nordstrom has similarly retained the limited right to make non-substantive changes unilaterally, but expressly states that all substantive changes will be distributed to employees in writing, not become affective for 30 days, and not affect any existing claims. Such a reservation of rights does not permit Nordstrom to choose to avoid the arbitration of existing claims, and thus does not render the promise of arbitration illusory.

### B. The Arbitration Agreement Is Not Unconscionable

Bourgeois argues that even if she entered into a valid agreement to arbitrate, the Dispute Resolution Program is unconscionable and therefore unenforceable. (Pl's Opp. Br. 13.) Under New Jersey law, the unconscionability inquiry requires the evaluation of two different factors—procedural unconscionability and substantive unconscionability. *Sitogum Holdings Inc., v. Ropes,* 352 N.J. Super. 555, 564 (Ch. Div. 2002). A sufficient showing of both factors should be made by the complaining party for a contract to be deemed unconscionable. *Id.* at 565. Procedural unconscionability evaluates unfairness in the formation of the contract by examining "age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." *Id.* at 564. Substantive unconscionability considers whether "the exchange of obligations is so one-sided as to shock the court's conscience." *Id.*

Bourgeois alleges that the arbitration agreement is a contract of adhesion, because she was required to consent to it or lose her job. (Pl's Opp. Br., p. 4.) "A contract of adhesion, simply put, is a contract 'presented on a take-it-or-leave-it basis, commonly in a standardized

printed form, without opportunity of the 'adhering' party to negotiate except perhaps on a few particulars.'" *Martindale*, 173 N.J. at 89 (quoting *Rudbart v. North Jersey Dist. Water Supply Comm'n.,* 127 N.J. 344, 353 (1992), *cert. denied*, 506 U.S. 871 (1992)).  In the context of an adhesive contract New Jersey courts consider "not only to the take-it-or-leave-it nature or the standardized form of the document but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract."  *Rubart*, 127 N.J. at 356.  However, the "observation that a contract falls within the definition of a contract of adhesion is not dispositive of the issue of enforceability." *Martindale*, 173 N.J. at 89.

In arguing that the agreement here is procedurally unconscionable, Bourgeois claims she was forced to sign the Acknowledgement Form to keep her job, and it was a standard agreement, the terms of which she did not have the opportunity to negotiate, therefore she had very little bargaining power. However, the United States Supreme Court has declared that a "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991).  The New Jersey Appellate Division thus concluded that "the Supreme Court [in *Gilmer*] obviously contemplated avoidance of the arbitration clause only upon circumstances more egregious than the ordinary economic pressure faced by every employee who needs the job." *Young v. Prudential Ins. Co. of Am., Inc.,* 297 N.J. Super. 605, 688 (App. Div. 1997).  That is exactly what Bourgeois alleges here, she was forced to sign to keep her job, and in and of itself this is not sufficient to invalidate the arbitration provision.

Bourgeois also argues that the agreement is procedurally unconscionable because its terms are so confusing and convoluted that Bourgeois could not have known what she was

agreeing to. Bourgeois makes this claim by trying to poke holes in the Nordstrom 3 Step Dispute Resolution Program by pointing to areas where it lacks specificity. (Pl's Opp. Br. 15–17.) Step 1 requires an employee with a grievance to speak to a manager or director. (Cert. of Leslie Orr-Wilkerson, Ex. C.) If this conversation fails to resolve the issue, Step 2 requires the employee to file a request for an internal review to be conducted by Human Resources, a representative of which will present solutions to the employee after the investigation is complete. (*Id.*) If the internal review is unsuccessful, Step 3 involves instituting arbitration. (*Id.*)

Bourgeois argues that because the Program Booklet does not state when an employee must institute Step 1, how long management has to respond to an employee's initiation of the process, when Step 2 can be invoked or how employees can obtain the relevant employment laws to determine whether their claims would be time barred for arbitration in step 3, it is too confusing and thus unconscionable. (Pl's Opp. Br. p. 16.) None of these timing related issues could seriously be argued to make the agreement unduly complex or unclear. Moreover, in her certification, Bourgeois clearly stated she understood the import of the agreement. She said "It was obvious to me, an individual unfamiliar with arbitration as I was, that a number of managers publically questioned why one would voluntarily waive a judge and jury trial for an unknown, unseen, arbitrator . . . ." (Cert. of Shelita Bourgeois, ¶ 8.) Bourgeois is a literate adult, who further demonstrated her sophistication by meeting with her store manager and H.R. director to discuss not signing the arbitration agreement. (*Id.* ¶ 9.) Bourgeois has failed to demonstrate that the agreement was so confusing or complex that it could be rendered procedurally unconscionable because she could not understand it. Her conduct demonstrates she knew the import of what she signed.

With respect to substantive unconscionability, Bourgeois argues that the Program requires employees to file an arbitration demand within 30 days and requires Bourgeois to bear her own attorney's fees, costs, and expenses thus making it substantively unconscionable. To make this claim, she relies on the Third Circuit's decision in *Nino v. Jewelry Exch.,* 609 F.3d 191, 202–03 (3d Cir. 2010), in which the court, applying the Territorial Law of the Virgin Islands, concluded the same.  While such terms would render an agreement substantively unconscionable, Bourgeois misrepresents the nature of the terms in the arbitration agreement here.

First, the Program Booklet does not require employees to file an arbitration demand within 30 days.  It notes that a request for arbitration must be submitted within the time frame required under applicable law or will otherwise be time barred, and goes on to state; "We encourage you to file the *Request for Arbitration* within 30 days after a final decision is made by management as detailed in Step 2 (the Internal Review process)." (Cert. of Leslie Orr-Wilkerson, Ex. C.)  Despite the fact that the policy merely *encourages* employees to file within 30 days, Bourgeois argues "it appears to be mandatory as it is the only time period discussed in the entire document." (Pl's Opp. Br. 17.) This argument is illogical and lacks any legal support.

Bourgeois similarly mischaracterizes the agreement in arguing that it impermissibly requires her to pay her attorney's fees, costs, and expenses.  With respect to the costs associated with arbitration, the Program Booklet states that there is a filing fee for initiating arbitration a portion of which must be paid by the employee, but "Nordstrom will pay the remainder of the filing fee, the arbitrator's fee and administrative expenses." (Cert. of Leslie Orr-Wilkerson, Ex. C.)  Further, if the employee "can show that [his or her] portion of the filing fee creates an undue hardship" he may seek to have the fee waived by Human Resources. (*Id.*) The agreement

13

does state that employees are responsible for paying their own attorney's fees if they choose to have representation, it explains, however, that "the arbitrator may award to you or Nordstrom reasonable attorney's fees that may be authorized by law." (*Id.*)  It further explains that the arbitrator may, in accordance with applicable laws, assess costs against either party. (*Id.*)  This is distinguishable from the situation Bourgeois cites to in *Nino*, in which the Third Circuit concluded that it was substantively unconscionable for the arbitration agreement to restrict the "the arbitrator's ability to award attorney's fees, costs and expenses."  Nordstrom has placed no such restriction on arbitrators, and thus its policy does not infringe upon the statutory protections and remedies Bourgeois should be afforded under the law.  Therefore, Bourgeois's arguments that the agreement is substantively unconscionable are unpersuasive.

The Nordstrom Dispute Resolution Program can reasonably be characterized as an adhesive contract. Bourgeois was not given the opportunity to negotiate the standardized terms of the Program.  Moreover, Bourgeois claims she was told she had to sign the agreement or she would lose her job. "Contracts of adhesion will have some signs of unconscionability, but are not illegal per se." *Jones v. Chubb Inst.*, No. 06-4937, 2007 WL 2892683, at *2 (D.N.J. Sept. 28, 2007).  Here, Bourgeois has failed to demonstrate any other signs of procedural or substantive unconscionability that would render the agreement unenforceable. Therefore, the Court concludes that the Nordstrom Dispute Resolution Program is not unconscionable and is a valid and enforceable contract.

### C. *Nordstrom Did Not Waive Its Right to Arbitrate*

Bourgeois argues that in the event that the arbitration agreement is valid, Nordstrom waived its right to arbitrate by participating in the four year EEOC investigation and raising arbitration only after this suit was filed. (Pl's Opp. Br. p. 20.)  To make such an argument

Bourgeois seeks to have this Court ignore *EEOC v. Waffle House, Inc.*, in which the Supreme Court held that an employer cannot stop the EEOC from bringing an enforcement action by relying on an arbitration agreement, because the EEOC is a third party not bound by the agreement. 534 U.S. 279 (2002). The First Circuit determined that "[t]he same logic applies to a preliminary EEOC investigation, which also cannot be halted by an arbitration agreement between the complaining employee and her employer." *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 15–16 (1st Cir. 2005). It concluded that failing to initiate arbitration during an EEOC investigation was not a waiver of the right to arbitrate because forcing the parties to proceed with arbitration at the time of the investigation would be an inefficient waste of resources, resulting in two parallel proceedings, and is thus contrary to the purposes of the FAA. *Id.*

Similarly, the Third Circuit has stated "we are aware of no authority that requires a defendant to proffer every possible defense or legal argument before the EEOC . . . ." *Petruska v. Gannon Univ.*, 462 F.3d 294, 308 (3d Cir. 2006). In concluding that a failure to raise arbitration during an EEOC investigation was not a waiver of the right to arbitrate, the Eastern District of Pennsylvania noted that although "the Third Circuit has not explicitly addressed the question . . . , numerous other courts have repeatedly held that a party's participation in EEOC or local agency proceedings is not inconsistent with the right to arbitrate." *Volpe v. Jetro Holdings*, WL 4916027, at *6 (E.D. Pa. Nov. 14, 2008). It went on to provide a laundry list of other courts that have come to the same conclusion:

> Numerous other federal courts confronting this issue have reached the identical conclusion. See *Barna v. Wackenhut Svcs.*, Civ. A. No. 07-147, 2007 WL 3146095, at *6 (N.D. Ohio Oct. 25, 2007) (finding defendant's failure to demand arbitration during EEOC proceedings did not constitute a waiver of right to arbitrate); *Taleb v. AutoNation USA Corp.*, Civ. A. No. 06-2013, 2006 WL 3716922, at *6–7 (D. Ariz. Nov. 13, 2006) (rejecting claim that defendant

15

employer's participation in administrative proceedings constituted waiver of right to arbitrate); *Santos v. GE Capitol*, 397 F. Supp. 2d 350, 356 (D. Conn. 2005) (declining to find employer's participation in EEOC arbitration to be a waiver of right to arbitrate); *Gonzalez v. GE Group Admrs., Inc.,* 321 F. Supp. 2d 165, 171–72 (D. Mass. 2004) (finding that defendant employers' participation in administrative proceedings before the EEOC and local agency, accompanied by their failure to seek to compel arbitration, did not constitute a waiver of their right to arbitration); *Hankee v. Menard, Inc.,* 2002 WL 32357167, at *4 ("an employer may participate in EEOC proceedings without losing its rights under the arbitration agreement."); *Medina v. Hispanic Broad. Corp.,* Civ. A. No. 01-2278, 2002 WL 389628, at *5–6 (N.D. Ill. Mar.12, 2002) (rejecting argument that defendant waived its right to enforce the arbitration agreement by not asserting this right during the EEOC's investigation or during a settlement conference at the Illinois Human Resource Commission, where defendant filed its motion to compel arbitration two months after receiving service of process); *Roberson v. Clear Channel Broad., Inc.,* 144 F. Supp. 2d 1371, 1375 (S.D. Fl. 2001) (declining to find waiver where defendant did not make a demand for arbitration during EEOC proceedings).

*Id.* at 7. This Court therefore concludes the Nordstrom's failure to initiate arbitration during the EEOC investigation did not amount to a waiver of its right to arbitrate.

    *D.  The Confidentiality Clause Is Enforceable*

Finally, Bourgeois claims that the confidentiality clause which prohibits both parties from disclosing the terms of an award is a "gag order" that "benefits only Nordstrom and violates Title VII and the ADEA." (Pl's Opp. Br. 24–25.) Bourgeois provides absolutely no legal basis for this assertion. The Third Circuit has held that confidentiality provisions are acceptable where "[e]ach side has the same rights and restraints under those provisions and there is nothing inherent in confidentiality itself that favors or burdens one party vis-a-vis the other in the dispute resolution process. Importantly, the confidentiality of the proceedings will not impede or burden in any way [the employee's] ability to obtain any relief to which she may be entitled." *Parilla v. IAP Worldwide Services, VI, Inc.*, 368 F.3d 269, 280 (3d Cir. 2004). The court also noted that

confidentiality does not violate the public policy goals of either the Title VII or the ADEA. *Id.* at 281. Thus, the Court concludes that the confidentiality clause here is enforceable.[1]

### B. Conclusion

In conclusion, Bourgeois and Nordstrom entered into a valid agreement to arbitrate and Nordstrom did not waive its right to arbitration. For the forgoing reasons, Nordstrom's motion to stay the judicial proceedings pending arbitration is granted. An appropriate order will be entered.

January 9, 2012                                                              /s/ Katharine S. Hayden
                                                                             Katharine S. Hayden, U.S.D.J.

---

[1] Even if the clause were to be deemed unconscionable, it would not invalidate the entire arbitration agreement because the Court could exercise its discretion to sever the provision, given the agreement's severability clause. *See, e.g., Kanef v. Delaware Title Loans, Inc.,* 587 F.3d 616, 625 (3d Cir. 2009) (prohibition on recovery of attorney's fees in arbitration was unenforceable, but the "provision . . . is severable pursuant to the severability clause of the agreement"). (Cert. of Leslie Orr-Wilkerson, Ex. C.)